IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELA R. B., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-CV-254-CVE-JFJ |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Angela R. B. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.   General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.  Procedural History and the ALJ's Decision

Plaintiff, then a 40-year-old female, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on April 25, 2017, alleging a disability onset date of March 1, 2015. R. 15, 202-214. Plaintiff claimed she was unable to work due to conditions including degenerative disc disease, spine problems, and herniated back disc. R. 230. Plaintiff's claims for benefits were denied initially on January 24, 2018, and on reconsideration on April 5, 2018. R. 69-130. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on June 13, 2019. R. 31-63. The ALJ issued a decision on August 23, 2019, denying benefits and finding Plaintiff not disabled because she was able to perform other work existing in the national economy. R. 15-25. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found Plaintiff's date last insured was December 31, 2020. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 1, 2015. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; chronic pain syndrome; lumbar and cervical radiculopathy; cervical and thoracic spondylosis; and right knee degenerative joint disease. *Id.* He found Plaintiff's impairments of carpal tunnel syndrome, varicose veins, and anxiety disorder to be non-severe. *Id.* In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in all four areas of (1) understanding, remembering, or applying information, (2) concentrating, persisting, or maintaining pace, (3) interacting with others, and (4) adapting or managing oneself. R. 19. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 20.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the following RFC:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no climbing ropes, ladders, or scaffolds; crawling; crouching; or balancing on uneven, moving, or narrow surfaces; occasional climbing of ramps or stairs, stoop and kneel; no work involving any exposure to unprotected heights; and no overhead reaching.

R. 20-21. At step four, the ALJ found that Plaintiff was unable to perform past relevant work. R. 23-24. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled sedentary exertion work, such as Assembler, Filler, and Clerical Sorter. R. 24-25. The ALJ determined the VE's testimony was inconsistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 25. However, the ALJ found there was a reasonable explanation for the discrepancy – namely, that the direction of

4

reaching is not covered by the DOT and the Selected Characteristics of Occupations ("SCO"), and that her opinion was based on the vocational field and her experience in the vocational field. *Id.* While these jobs require frequent reaching, the ALJ noted that she only limited Plaintiff's ability to perform overhead reaching and not reaching in all other directions. *Id.* Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

### III. Issues

Plaintiff raises two points of error in her challenge to the denial of benefits: (1) the ALJ's RFC and hypothetical to the VE were improper, because they did not contain all of Plaintiff's impairments; and (2) the ALJ's consistency analysis was flawed. ECF No. 18.

### IV. Analysis

#### A. ALJ's Determination of RFC and Step-Five Analysis Were Proper

##### 1. Mental Impairments

Plaintiff contends that the ALJ erred by not explicitly incorporating her finding of step-two "mild" mental limitations regarding the four "paragraph B" functioning categories into the RFC assessment. R. 19. However, an ALJ is not necessarily bound by her step-two mental findings when determining a claimant's RFC. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4; *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."). The ALJ explained as much in the decision. R. 19 (stating that the mental limitations identified in the "paragraph B" functional criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps two and three, and the mental RFC "requires a more detailed assessment"). While the ALJ must consider evidence of mental impairments when formulating an

RFC or hypothetical question to the VE, the ALJ is not required to expressly include step-two findings as to paragraph B mental limits in the RFC. *See* SSR 96-8p (stating that the mental RFC determination requires a "more detailed assessment" of the various functions contained in the broad mental limitation categories listed at steps two and three).

Here, the ALJ accommodated Plaintiff's difficulties in the four "paragraph B" areas by limiting Plaintiff to unskilled work. R. 24. In reaching the determination that further RFC limitations were not warranted, the ALJ reviewed Plaintiff's treatment records, her testimony and statements, and the opinion evidence, and she connected those records to the RFC findings. R. 19-20, 21, 23. Specifically, the ALJ noted that, in treatment records dated June 6, 2018, Plaintiff reported that her anxiety was well controlled on medication, and her anxiety was high at that time because she had not had her prescription filled for a month. R. 19 (citing R. 693). The ALJ further noted that Plaintiff reported problems being around people because she could not handle confrontation or loud noises. *Id.* (citing hearing testimony). She also noted that, although Plaintiff reported having mental issues, she also reported she had not undergone any mental health treatment. *Id.* (citing hearing testimony). The ALJ additionally relied on the agency reviewers' opinions that Plaintiff's mental impairments were nonsevere. R. 20 (citing R. 116-130).

Plaintiff points to no records indicating that her mental limitations were more severe than the ALJ indicated in the RFC. The ALJ was not required to expressly include additional limitations regarding the four functional mental areas in the RFC. Accordingly, Plaintiff's argument fails.

  **2. Carpal Tunnel Syndrome**

Plaintiff argues the ALJ's RFC for sedentary work with postural limitations, and the resulting step-five conclusions, were flawed, because the ALJ failed to include manipulative limitations in handling and fingering to account for her carpal tunnel syndrome. As Plaintiff acknowledges, the ALJ considered Plaintiff's carpal tunnel syndrome but found there were no

6

resulting functional limitations supported by the record. R. 18. The ALJ noted at step two that Plaintiff had mild effusions in the bilateral hand metacarpophalangeal joints and PIP joints at her January 2016 consultative exam. R. 18 (citing R. 398). The ALJ also noted that Plaintiff was diagnosed with bilateral carpal tunnel syndrome on July 25, 2018, but the record on that date does not indicate any physical examination findings related to that diagnosis. *Id.* (citing R. 632-635). In discussing the RFC, the ALJ noted that x-rays of the bilateral hands in February 2016 were considered negative for evidence of fracture or other significant bone or soft tissue abnormality. R. 22 (citing R. 466-467). Further, at a consultative examination performed in December 2017, Plaintiff's grip strength was equal bilaterally at 5 out of 5. R. 23 (citing R. 577). Wrist and finger ranges of motion were observed to be normal, and carpal tunnel assessment and manipulative functional evaluations were normal. R. 581.

      Plaintiff does not challenge any of the ALJ's findings related to carpal tunnel syndrome. Nonetheless, she argues that the ALJ should have imposed handling and fingering restrictions into the RFC, because the ALJ found she had nonsevere carpal tunnel syndrome. The undersigned identifies no error in the ALJ's assessment of Plaintiff's carpal tunnel syndrome and finds no support for Plaintiff's allegation that the ALJ should have assigned manipulative limitations on either hand as a result. Plaintiff points to no objective evidence or subjective complaints to medical providers supporting any functional impairments related to carpal tunnel syndrome. The ALJ appropriately considered Plaintiff's carpal tunnel syndrome and did not impose any manipulative RFC limitations based on that alleged impairment. As a result, the ALJ was not required to eliminate any of the step-five jobs from consideration based on their handling requirements. *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (finding that a hypothetical question to VE must contain "only . . . those impairments borne out by the evidentiary record").

### 3.    Step-Five Jobs

Plaintiff argues the ALJ's step-five conclusion is fatally flawed, because both the ALJ and the VE stated an incorrect job title for one of the step-five jobs – namely, the job identified with DOT code #249.587-018. *See* R. 25 (identifying job with DOT code #249.587-018 as "Clerical Sorter"), R. 58 (same). As Plaintiff points out, the correct DOT job title for the stated code is "Document Preparer." It is unclear why the VE and ALJ named the job with this DOT code as "Clerical Sorter." However, both the VE and the ALJ correctly stated that the job identified by DOT code #249.587-018 is a sedentary job with a Specific Vocational Preparation level of two. R. 25, 58. Even if the VE and ALJ mistakenly identified this job's title, Plaintiff has failed to show that the mistake points to any unresolved conflict between the VE's testimony and the DOT. There is no separate job in the DOT with the title of "Clerical Sorter," which makes it highly unlikely that the VE intended to identify a different job than the one at DOT code #249.587-018. The error appears to be a technical error that is "minor enough not to undermine confidence in the determination of the case." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (cleaned up). Under these circumstances, reversal is not required.

Plaintiff additionally argues that, had she been limited to "simple" work in the RFC, she would not be able to perform the step-five job identified by DOT code #249.587-018, because the DOT assigns it a reasoning level of three. *See* DOT #249.587-018 (Document Preparer). The reasoning level component is a classification under the General Educational Development ("GED") scale. DOT App'x C, § III, 1991 WL 688702. The GED scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development. *Id.* The "Reasoning Development" division of the GED scale is divided into six levels. A job with a reasoning level of three requires the worker to "[a]pply commonsense understanding to carry out

instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

While the Tenth Circuit has stated that an RFC limitation to "simple and routine" work tasks "seems inconsistent with the demands of level-three reasoning" *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), Plaintiff's RFC here was not limited to simple work. Rather, the ALJ found that Plaintiff's mental impairments were nonsevere and included no mental limitations in the RFC. R. 18-19, 20-21. Plaintiff argues that a "simple work" limitation should have been added to her RFC based on her anxiety. However, as explained above, the ALJ addressed Plaintiff's nonsevere anxiety disorder but found no mental limitations were necessary. Plaintiff cites to no records to indicate her anxiety was more functionally limiting than the ALJ explained. To the extent Plaintiff argues that a limitation to "unskilled" work precludes reasoning level-three jobs, Plaintiff cites no supporting authority and the undersigned is aware of none. Accordingly, no conflict exists between Plaintiff's RFC and the level-three reasoning required by the job identified by DOT code #249.587-018.

### B. ALJ's Consistency Analysis Was Legally Proper and Supported by Substantial Evidence

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a

claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 404.1529(c)(3).[2]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to produce the alleged symptoms," but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record. R. 21. In reaching this conclusion, the ALJ noted that June 2011 and August 2016 diagnostic testing indicated that Plaintiff had mild to moderate degenerative changes in the spine, and a January 2016 consultative exam revealed limited range of motion of the spine, negative straight-leg raise testing, and normal toe and heel walking with

---

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

pain. R. 22 (citing R. 415, 397-403, 571-572). At the consultative exam, Plaintiff ambulated with a stable but antalgic gait at a decreased speed without use of assistive devices. *Id.* (citing R. 398). At a subsequent consultative exam performed in December 2017, Plaintiff had pain with passive range of motion of all major joints, which caused great limitation to range of motion testing, particularly in the lower extremities. R. 23 (citing R. 576-582). She also moved around the room with an abnormal gait at normal speed, with a limp and pain in the right knee. *Id.* (citing R. 576-582). However, her grip strength was equal bilaterally at 5 out of 5, she did not require the use of an assistive device when walking, and the examiner observed Plaintiff in the lobby before and after the examination with an improved gait. *Id.* (citing R. 576-582). The ALJ further noted that Plaintiff's chronic pain and anxiety were well-managed with medications, as demonstrated in her treatment records. R. 19, 23 (citing R. 693). The ALJ also considered the agency reviewers' opinion that Plaintiff could perform a full range of light work, but the ALJ gave Plaintiff the "benefit of the doubt, especially following a recent knee surgery," in finding that further limitations were warranted. R. 23.

Plaintiff alleges the ALJ's analysis was insufficient for numerous reasons. First, Plaintiff argues that the ALJ failed to "discuss the significance of" her activities of daily living. ECF No. 18 at 8 (citing R. 21). Plaintiff points to her hearing testimony that she has difficulty performing her personal needs, does no household chores, shops with a motorized cart to get around, watches television, and does not read. Plaintiff further lists out additional details regarding her physical limitations, minimal household activities, and use of a cane. *See* ECF No. 18 at 8-11. However, the ALJ summarized Plaintiff's hearing testimony (R. 40-55) and her statements from her July 2017 Function Report (R. 236-243), and she explained the extent to which Plaintiff's testimony was inconsistent with the consultative exams, diagnostic testing, and treatment notes. R. 19, 21-

23. Plaintiff points to her own subjective complaints but fails to point to any observations or testing results that would support those complaints or contradict the ALJ's findings. Accordingly, Plaintiff's argument is unavailing.

Plaintiff next argues the ALJ erred by pointing out that her cane, which she used at the hearing, was not prescribed (R. 21), and she contends the ALJ should not have discounted her testimony on that basis. However, the ALJ noted that at both consultative examinations, Plaintiff was able to ambulate with a stable but antalgic or limping gait without use of an assistive device. R. 22-23 (citing R. 397-403, 576-582). The ALJ also noted that the December 2017 consultative examiner observed Plaintiff in the lobby before and after the examination, and her gait was better at these times. R. 23 (citing R. 577). In the reply brief, Plaintiff points to various treatment records where her care provider observed her to have an unsteady, limping, or shuffling gait. *See* R. 474, 589, 592, 598, 600, 603, 707, 709, 711, 716, 719, 722, 724, 727. However, these records do not contradict the consultative examination findings and do not indicate she needed a cane to ambulate. The ALJ was entitled to discount Plaintiff's testimony that a cane was necessary for ambulation where evidence showed otherwise.

Plaintiff further argues the ALJ improperly evaluated her allegations of anxiety, because she reported in a March 2018 Function Report that her anxiety medication, Vistaril, did not help her with handling stress. R. 268. However, Plaintiff fails to note that she reported to her health care provider in June 2018 that her anxiety was well controlled on Vistaril. R. 693. Plaintiff further alleges the ALJ incorrectly stated Plaintiff had not undergone any mental health treatment, because she had been prescribed Vistaril for anxiety. However, Plaintiff points to no records showing she underwent any specialized mental health treatment, and the record does not indicate she was prescribed Vistaril by a specialized mental health provider.

12

Plaintiff next alleges the ALJ overlooked her complaints of forgetfulness, fatigue, and difficulty following instructions, some of which she associates with her medications. *See* R. 286 (July 2018 Disability Report). However, the ALJ noted Plaintiff's testimony that she would not be able to describe an hour-long television show after watching it, and he assessed her with mild limitations in the paragraph B functional area of "understanding, remembering, or applying information." R. 19. The ALJ further noted that plaintiff stated she could pay attention for "[l]ong periods of time" and could follow instructions. R. 19 (citing R. 241). He assessed her with mild limitations in the area of "concentrating, persisting, or maintaining pace," in part, because of her testimony that she sometimes forgets to take her medications. *Id.* Plaintiff takes issue with the ALJ's notation in discussing the paragraph B criteria that Plaintiff "did not allege" or "did not note" any particular problems related to any of the four functional domains. R. 19. While Plaintiff can point to some notations in the record showing some problems in these various functional areas, the ALJ was specifically referring to her July 2017 Function Report (R. 236-243) and her hearing testimony in making these findings. The ALJ accurately described Plaintiff's statements and hearing testimony. The undersigned identifies no error in the ALJ's evaluation of Plaintiff's abilities in these functional areas.

Plaintiff next argues that her June 2011 cervical spine MRI and her August 2016 lumbar spine MRI revealed problems that could explain her neck and back pain. R. 415, 570-571. Based on the MRI impressions, Plaintiff speculates that she suffered from arthritis. ECF No. 18 at 12-13. However, the ALJ noted both of these MRIs and their findings, and Plaintiff fails to point to any aspect of the MRI impressions that the ALJ failed to consider. Plaintiff also points to no records showing she suffered from arthritis. Plaintiff further argues that her narcotic pain medications did not eliminate her pain. However, as the ALJ noted, Plaintiff reported that her

chronic pain was well managed with medication in June 2018. R. 23 (citing R. 693). Plaintiff's citations to much earlier records, dated 2007, 2013, and 2015, do not point to any error in the ALJ's evaluation of Plaintiff's pain. *See* R. 341, 377, 385, 431, 456.

Finally, Plaintiff argues the ALJ minimized her shoulder pain and reduced shoulder ranges of motion. She argues the ALJ omitted the fact that Plaintiff underwent shoulder surgery in February 2017. However, the ALJ noted that Plaintiff had painful range of motion of the right shoulder at a January 2017 clinical visit, and she that was assessed with chronic impingement syndrome with possibility of a partial rotator cuff tear. R. 22 (citing R. 533-534). While the ALJ did not specifically note her subsequent shoulder surgery, the ALJ did note that, at the December 2017 consultative exam, Plaintiff demonstrated great limitation to range of motion testing and had pain with passive range of motion in the shoulders. R. 23 (citing R. 576-582). It appears the ALJ accommodated Plaintiff's shoulder issues in the RFC, by limiting her to no overhead reaching, no climbing ropes, ladders, or scaffolds, and no crawling. R. 21. Plaintiff further points out that no doctor has found her to have exaggerated her pain or other symptoms, but she fails to point to any related error in the ALJ's analysis regarding her reports of pain.

In sum, Plaintiff's consistency arguments are unavailing, and the ALJ's discussion of Plaintiff's subjective complaints and the objective evidence satisfies SSR 16-3p. Plaintiff only asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax*, 489 F.3d at 1084.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by September 27, 2021.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 13th day of September, 2021.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**